EBEL, Circuit Judge,
Concurring.
I join the majority opinion completely and write this brief concurrence only to emphasize one point: if a district court submits the question of qualified immunity to the jury because there are disputed historical facts material to resolving the immunity question, the district court should submit to the jury only the disputed factual contentions underlying the immuni *863 ty question and should reserve for itself the legal question of objective reasonableness.
I agree with the majority that a court may submit the issue of qualified immunity to the jury only where there is a dispute of fact pivotal to determining whether the defendant is entitled to qualified immunity. I also agree with the majority that there were no such material facts in dispute with respect to the Gonzales’ Fourth Amendment claims, but that the error in submitting the qualified immunity question to the jury on that claim was harmless. See supra at 861-62.
However, I would prefer to conclude unequivocally that there were disputed material facts with respect to Jade Gonzales’ Fourteenth Amendment claim. Thus, in my opinion, if the qualified immunity defense was submitted to the jury regarding the Fourteenth Amendment claim (and the majority opinion correctly notes that that proposition is far from clear), then I would conclude that there would have been no error in submitting that defense to the jury had the submission been limited to the factual components. But, I think the district court erred in phrasing the qualified immunity inteiTOgatory in a manner that allowed the jury to resolve the legal question of whether the defendants’ conduct was “objectively reasonable” in light of the clearly established law. Nonetheless, I would find that Gonzales waived her right to rely on this error, and even if she had not, the error was harmless. On this basis, I concur with the majority and agree that this court should affirm.
DISCUSSION

A. The Fourteenth Amendment Claim

Normally, a district court must resolve the question of qualified immunity. Keylon v. City of Albuquerque, 535 F.3d 1210, 1217 (10th Cir.2008). A district court may submit the question of qualified immunity to the jury only where historical facts necessary to resolution of that question are disputed, see Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir.2003); that is, if a district court were to view the disputed facts first in the light most favorable to the plaintiff and then in the light most favorable to the defendant, the district court would reach a different conclusion as to the qualified immunity question under the two views of the facts. In such a situation, a reasonable jury could accept either version of the facts, and the resolution of the qualified immunity issue would turn on which version the jury accepts.
In this case, there were disputed facts pivotal to whether the defendants’ conduct in interrogating Jade Gonzales was “objectively reasonable” in light of clearly established law. Jade Gonzales, who was twelve at the time of the interrogation, presented evidence from which a jury could find that Officers Hall, Dilley, Duran, and Kendrick severely berated Gonzales with curse words, threats of jail, and comments that her mom did not “give a shit about [her]” (Aplt.App. at 569-27), questioned her about her father’s sexual affairs, caused her to soil herself in front of three adult men, intentionally ignored her requests for an attorney, and intentionally did not Mirandize her. Viewed in the light most favorable to the defendants, however, a jury could find that Gonzales was not abusively yelled at, Officer Duran was never even present during the interview, the interview was a spontaneous, short discussion, Gonzales never requested an attorney, and Gonzales never wet herself as she was made to wait only a short time to use the restroom. If the jury accepted Gonzales’ version of the facts, the defendants’ conduct would not be objectively reasonable in light of Gonzales’ *864 clearly established substantive due process rights. However, if the jury accepted the defendants’ version of the facts, a court would reach the contrary legal conclusion. Thus, the disputed facts are material to the qualified immunity issue, and the district court did not err in submitting the qualified immunity question to the jury.

B. The Phraseology of the Qualified Immunity Question

While the district court may not have erred in submitting this particular qualified immunity question to the jury, it did err in how it stated the immunity question to the jury. Specifically, to the extent the interrogatory asked the jury to decide whether the defendants’ conduct was objectively reasonable, the district court erred. Stating that a district court may “submit the question of qualified immunity to the jury” when there are material disputed facts is somewhat misleading. Whether a defendant’s conduct is objectively reasonable is always a question of law for the court. The only reason a district court does not resolve the qualified immunity question before the case goes to the jury is because there are underlying disputed historical facts necessary to resolution of that legal issue. The jury needs only to resolve those disputed facts to allow the court to resolve the legal question of objective reasonableness. Thus, the district court should have submitted specific fact-finding interrogatories to the jury that would have allowed it to resolve the material disputed facts, but the district court should have reserved for itself the question of whether the defendants’ conduct was objectively reasonable in light of clearly established law. See, e.g., Curley v. Klem, 499 F.3d 199, 211 (3d Cir.2007) (“[Wjhether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury ... [and] [w]hen a district court submits that question of law to a jury, it commits reversible error.” (internal citation omitted)); Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir.2007) (“Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer’s conduct was objectively reasonable is to be made by the court.”); Willingham v. Crooke, 412 F.3d 553, 559-60 (4th Cir.2005); Littrell v. Franklin, 388 F.3d 578, 585-86 (8th Cir.2004); Pouillon v. City of Owosso, 206 F.3d 711, 718-19 (6th Cir.2000); Warlick v. Cross, 969 F.2d 303, 305-06 (7th Cir.1992); Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir.1991).
In this case, however, the district court’s improper submission of the “objectively reasonable” question to the jury does not mandate reversal. First, Gonzales waived this ground for relief by failing to object at trial to the phraseology of the interrogatory. See Fischer v. Forestwood Co., 525 F.3d 972, 978 n. 2 (10th Cir.2008) (“[Arguments not raised in the district court are waived on appeal.”) (citing Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1167 (10th Cir.2005)). Second, even if Gonzales had raised this issue, the error would be harmless because, as the majority explained in its harmless error analysis, supra at 861-62, the jury separately reached the merits of Jade Gonzales’ Fourteenth Amendment claim and concluded that the defendants committed no constitutional violation. Because this conclusion obviated the need to reach the merits and Gonzales has not otherwise shown prejudice, the error in phrasing the immunity question was harmless. See supra at 861-62.
I think a court should never ask the jury to resolve the legal question of whether a *865 defendant’s conduct is objectively reasonable. Nonetheless, I do not find it necessary to quarrel with the majority or to urge cn banc review of our precedents because of the way I resolve this issue.
I concur with the majority’s judgment in this case and agree that this court should affirm.